Janice **WIENER** et al., Plaintiffs,

v.

**UNITED AIR LINES** et al., Defendants.

Nos. 469–58–PH, 923–58–PH, 970–58–PH, 1040–58–PH, 1041–58–PH, 1042–58–PH, 1086–58–PH, 1112–58–PH, 29–59–PH, 30–59–PH, 64–59–PH, 76–59–PH, 288–59–PH, 309–59–PH, 310–59–PH, 361–59–PH, 355–59–PH, 369–59–PH, 281–60–PH, 62–1601–PH, 62–1602–PH, 62–1603–PH, 62–1604–PH, 62–1605–PH.

United States District Court
S. D. California,
Central Division.

Dec. 4, 1964.

See also 9 Cir., 335 F.2d 379.

Belcher, Henzie & Biegenzahn, Frank B. Belcher, Los Angeles, Cal., for Ruth E. Simmons and others.

Johnson & Ladenberger, Robert G. Johnson, Los Angeles, Cal., for Martha Kallenbough.

Jack Dunaway, Hollywood, Cal., for Leona Mae Petrie.

Flanagan & Allen, R. Virgil Allen, Los Angeles, Cal., for Ruth L. Thomas.

Belli, Ashe & Gerry, Los Angeles, Cal., for Faith C. Paris.

Joseph C. Lavelle, Sacramento, Cal., for Stephen Emanuel.

Tuttle, Tuttle & Taylor, John D. Determan, Los Angeles, Cal., William A. Norris, Francis J. Garvey, Covina, Cal., for Helen A. Friedel.

Algerdas N. Cheleden, Anthony J. Bradisse, James A. Withers, Los Angeles, Cal., for Isabella M. Larava.

Spence & Mack, Harold R. Spence, Augustus F. Mack, Jr., Los Angeles, Cal., for S. Rush Bailey.

Pastor & Zipser, Stanley Zipser, Beverly Hills, Cal., for Edith Wagner Trujillo.

Margolis, McTernan & Branton, Ben Margolis, Los Angeles, Cal., for Janice Wiener.

Oliver, Good & Sloan, Richard L. Oliver, Los Angeles, Cal., for Max Kaufman and others.

Samuel A. Miller, Los Angeles, Cal., for Carol U. Aaronson.

Collins & Clements, Barrick, Poole & Olson, John Poole, Pasadena, Cal., for Chas. L. Rachford.

Harvey Erickson, Spokane, Wash., Frank Garvey, Covina, Cal., for Lelia R. Pebles.

Gladys Towles Root, Richard McLeod, John C. Gregory, Los Angeles, Cal., for Dorothy M. Weil.

George S. Pratt, Bertrand Rhine, Los Angeles, Cal., for Inez O'Brien Kay.

Loton Wells, San Francisco, Cal., for State Compensation Insurance Fund.

Margolis & Johnson, for Catherine Nollenberger and others.

Ross & O'Connor, Omaha, Neb., for Mary E. Darmody.

Joseph W. Pierce, Glendale, Cal., for Great American Ins. Co.

Donald A. Fareed, Michael I. Greer, Milan Dostal, Donald J. Merriman, Asst. U. S. Attys., for United States.

Chase, Rotchford, Downen & Drukker, Hugh B. Rotchford, James J. McCarthy, Otto Kaus, Los Angeles, Cal., for United Air Lines.

HALL, District Judge.

It having appeared that it was expected that the defendant United Air Lines would shortly deposit in court sufficient money to satisfy the separate judgments against it in each of the above-numbered cases, the Court, of its own motion, on October 23, 1964, directed an Order to all counsel in said cases that they set forth their respective positions on six questions, hereinafter appearing.

Counsel for all parties have now complied with that Order, and United Air Lines, on November 13, 1964, made a deposit in court of the total principal, interest and costs to that date, but erroneously calculated the rate of interest at six per cent. The interest has now been calculated at the legal rate of seven per cent to December 9, 1964, and the Court is advised that United Air Lines will, on that date, deposit the difference in court, and mail to each counsel a statement of its calculations so that if they have any objections thereto, they may assert them by filing same with the Clerk, and serving same on United Air Lines.

In the Paris case (No. 62–1603–PH) and in the Rachford case (No. 310–59–PH) plaintiffs' counsel are of the view that distribution should be controlled by the law of California which places discretion in the Trial Court to make distribution under California CCP § 377, which distribution usually results in about one-half or more being distributed to the widow, and the remainder divided between the remaining heirs.

All other counsel expressed the view that the Nevada law is controlling in the determination of the division and distribution of the proceeds of the judgments.

In most of the cases, the widows waived any right they might have under California law, and consented that the distribution be made in equal shares between themselves and their children as provided by the Nevada statutes.

In the cases where all of those who are entitled to participate in the judgments are adults, no adjudication will be necessary if the parties agree as to distribution. If they do agree, they will

prepare a Petition for Distribution, Judgment, and Satisfaction of Judgment, all as more specifically hereinafter set out.

In all other cases where there are minors, an adjudication by this court is necessary, and the matters concerned with the distribution are now posed for judicial decision.

No further hearings are necessary in view of the conclusions herein reached, and no special representatives are required for the minors in view of the fact that the widows are the only ones sacrificing anything by their waivers in favor of the minors under the Nevada law.

The six questions and my categorical answers thereto follow:

1—Does the Nevada or the California law or some other State (domicile) law apply in determining the division and distribution of these funds?

Answer—The Nevada law applies. (See Discussion which follows).

2—Does this court (as opposed to an appropriate State court) have jurisdiction and power to determine the division and distribution of these funds and of any other funds that may be collected in the future toward satisfaction of any of the final judgments entered herein?

Answer—This court has jurisdiction and the duty to make such determination under the Nevada law. (See Discussion which follows).

3—If the answer to Question 2 above is negative, what law of what State is applicable?

Answer—This question is answered by the answer to Question No. 2.

4—What is the proper division and distribution of these funds in your case? Prepare two tabular calculations: (1) based on the assumption the Nevada law is applicable; and (2) based on the assumption the California or other appropriate State law governs.

Answer—This will have to be determined in each case separately.

5—What effect will the earned interest and attorneys' fees have on the computations made in response to Question No. 4 above?

Answer—The attorneys' fees are to be calculated on the principal and the earned interest to date of payment. [Price v. United States (D.C.Va. 1961) 195 F.Supp. 203].

6—What effect does the limitation on attorneys' fees under Title 28, U.S.Code, Section 2678, have on the question of indemnity as determined by the Ninth Circuit in United Airlines Inc., v. Wiener (1964), 9 Cir., 335 F.2d 379?

Answer—The limitation on attorneys' fees under 28 U.S.C. 2678 has no effect on the limitation of attorneys' fees allowable on the judgments against United Air Lines, because the matter of indemnity is strictly between United Air Lines and the United States, and plaintiffs are not concerned therein. No authorities were cited and none have been found.

## DISCUSSION

■ The right to recover for wrongful death is not a common law right, but is dependent upon statute. There being no Federal Wrongful Death Statute, resort must be had to the applicable State Statute.

All of the Complaints in the above cases, except one [1] alleged the right to

---

1. In the Paris case, No. 62–1603–PH, no Statute was pleaded. In Ryan v. North Alaska Salmon Company (1908) 153 Cal. 438, 95 P. 862, the court held that the law of the foreign State must

be pleaded not only to show that in that forum there existed the right of action sued upon, but also it must be pleaded to show that the action is brought by the person in whom, under the laws of

recover under the Nevada Statute, and all of the cases were tried, the jury instructed, verdicts returned, and Judgments entered under the Nevada Statute.

■ Under the Wrongful Death Statute of California, CCP § 377, the moneys recovered by a judgment in a wrongful death case do not become part of the estate and are not distributable according to the laws of succession. [Estate of Riccomi (1921) 185 Cal. 458, 463, 197 P. 97, 14 A.L.R. 509]. Such funds are distributable in a separate proceeding, for which purpose, the court retains jurisdiction. [Watkins v. Nutting (1941) 17 Cal.2d 490–498, 110 P. 2d 384]. The rule is the same in the United States District Court. [Garrett v. McRee (10 Cir. 1953) 201 F.2d 250, 253; Arizona Lead Mines v. Sullivan (D.C.Ida.1943) 3 F.R.D. 135, 139; Stark v. Chicago etc. Railway (7 Cir. 1953) 203 F.2d 786; Local Rule 22].

■ Under the law of Nevada, as it stood on April 21, 1958, the date of the accident (Nevada Rev.St. 41.090 [2]), the proceeds of such judgment are not liable for debt, and hence not part of the estate, and the proceeds are not distributable under Nevada laws of succession. But, unlike the California law, distribution is fixed in stated proportions among the next of kin, and if no next of kin, then by Nevada Rules of succession, as in personal property. Thus, the difference between the California Statute and the Nevada Statute lies in the fact that in California the Court is under the duty to make inquiry and distribute the pro-

ceeds in its discretion; whereas in Nevada, there is no discretion in the court, and distribution must be made by the formula specifically set forth in the Statute.

This brings into consideration the California Conflict of Laws Rule, or better stated, the Choice of Law Rule in California, with regard to distribution of the judgments in these wrongful death cases.[3] No California case is found which deals specifically with California choice of law on the matter of distribution of funds in wrongful death cases. But California has well-settled general rules as to the choice of law in wrongful death cases. In Zinn v. Ex-Cell-O Corp. (1957) 148 C.A.2d 56, p. 79, 306 P.2d 1017, p. 1031, the Court said:

"As said in Loranger v. Nadeau, 215 Cal. 362, 363, 366, 10 P.2d 63, 65, 84 A.L.R. 1264: 'It is the settled law in the United States that an action in tort is governed by the law of the jurisdiction where the tort was committed, and, as it is a transitory action, it may be maintained in any jurisdiction where the defendant may be found. It is the general rule in tort actions that the court will, if it has jurisdiction of the necessary parties and can do substantial justice between them in accordance with its own forms of procedure, enforce the foreign law if it is not contrary to the public policy of the forum, to abstract justice, or pure morals, or injurious to the welfare of the people of the state of the forum.' To the same ef-

the foreign jurisdiction, the right of action is vested. But no point has been made of that failure in the Paris case, and should it be regarded as of importance, counsel is referred to F.R.Civ.P. 15 relating to amendment of pleadings, even after Judgment, and the liberal construction thereof by the cases cited thereunder.

2. The law has since been amended.

3. In Cases No. 62–1600–PH to No. 62–1606–PH inclusive, liability was deter-

mined by the District Court of Nevada (this Judge sitting) and venue thereafter was transferred to the Southern District of California, where the question of damages was tried. In view of the conclusions reached, it is unnecessary to consider any incipient questions which might lurk in the cases because liability was decided by the District Court of Nevada, and the amount of damages decided by the District Court of the Southern District of California.

fect, Grant v. McAuliffe, 1953, 41 Cal.2d 859, 862, 264 P.2d 944, 42 A.L.R.2d 1162."

In the earlier case (1908) Ryan v. North Alaska Salmon Co., 153 Cal. 438, 95 P. 862, the mother, as sole survivor of her son who was killed in Alaska, filed suit in California, claiming the right to recover under California CCP § 377. The Territory of Alaska had a Wrongful Death Statute, but it permitted suit only by personal representative, and not by heirs as permitted by California, CCP § 377. The lower court sustained the demurrer which was affirmed by the Supreme Court which said, page 439, 95 P. p. 862:

"The demurrer was properly sustained. Where the action as here is transitory in its nature, a right or liability imposed by the statute of another state or of the United States, may in proper cases be asserted and enforced in this state. Such may be taken to be the settled rule since the case of Dennick v. Railway, 103 U.S. 11 [26 L.Ed. 439]. But the courts of this state will only entertain such an action for the purpose and upon the terms permitted by the *lex loci*. In other words, the right to prosecute this action in California is permissible only if permissible under the laws of Alaska, and only upon such terms as the laws of Alaska prescribe. And, as at common law there was no right of action for an injury causing death, and as the courts of this state do not take judicial notice of the laws of foreign states, it is necessary for the plaintiff to plead and prove such law."

Dennick v. Railway (1880) 103 U.S. 11, 26 L.Ed. 439, was an action in New York by a New York appointed administratrix for death occurring in New Jersey. The court there said (p. 20): "The court which renders judgment for damages in favor of the administratrix can only do so by virtue of the New Jersey statute, so any court having control of her can *compel distribution of the amount* received *in the amount prescribed by that Statute*." (Italics supplied.)

In Atchison, T. S. & F. Ry. Co. v. Nichols (1924) 264 U.S. 348, 44 S.Ct. 353, 68 L.Ed. 720, the Supreme Court affirmed the Ninth Circuit Court of Appeals in a diversity case in holding that, the death having occurred in New Mexico, the limitation of liability in the New Mexico Wrongful Death Statute prevailed over, and was not contrary to, the Public Policy of California, the forum State and apparently the place of citizenship of the deceased. The case cited with approval the Dennick case, supra, and Ryan v. North Alaska Salmon Co., supra.

In Victor v. Sperry (1958) 163 Cal. App.2d 518, 329 P.2d 728 (hearing by Supreme Court denied 11/5/58) the Court, in a personal injury action, held that the limitation of the Mexican law upon the amount of damages "is not contrary to the public policy of the State of California or injurious to the welfare of the people thereof." (p. 524, 329 P.2d p. 732.) The court quoted with approval from Hudson v. Von Hamm (1927) 85 Cal.App. 323, 259 P. 374, a statement which gives some guidance on how to determine whether or not the law of another state is contrary to the public policy of California. The statement follows:

"While there may appear to be some confusion of authorities due to a natural difficulty in construing laws or statutes, and in applying the doctrine of the law of comity, the decisions of the courts of America seem to be in harmony to the effect that, when the positive law of the forum, represented by its Constitution, statutes, or current decisions is in substantial conflict with the law of the foreign state, country, or territory, upon the subject-matter in controversy, the courts of the forum will decline to accept jurisdiction without violation of the doctrine of the comity of nations."

In Gordon v. Reynolds (1960) 187 Cal. App.2d 472, 10 Cal.Rptr. 73 (hearing denied by the Supreme Court 2/15/61), the court held that California CCP § 377 gave no right of action for death occurring on the high seas, but that the Federal Death on the High Seas Act [46 U.S.C. §§ 761–768] controlled and placed jurisdiction exclusively in the Federal courts. On page 478, 10 Cal.Rptr. on page 78, the court quoted with approval from the Ninth Circuit case of Higa v. Transocean Airlines (1955) 230 F.2d 780, as follows:

"[W]here the statute creating the right provides an exclusive remedy, to be enforced in a particular way, * * * the aggrieved party will be left to the remedy given by the statute which created the right."

In Wilson v. Lockheed (1962) 210 Cal. App.2d 451, 26 Cal.Rptr. 626, the Court applied the limitation period of the Wrongful Death Statute of Texas, and held it was not against the Public Policy of California.

■■ From the foregoing, the conclusion is compelled that the public policy of California, as expressed in its constitution, statutes, and decisions, is not contrary to the distribution provisions of the Nevada Statute, nor are those provisions contrary "to abstract justice or pure morals, or injurious to the welfare of the people of the State of the forum."

The foregoing conclusion is in accord with the general rule as it is set forth in Restatement, Conflict of Laws, § 393 —"Damages recovered in one State on a cause of action created by the death statute of another State are distributed as provided by the law of the latter State." [See also: 92 A.L.R.2d 1133].

Counsel in the Paris case (No. 62–1603–PH) suggest that several recent cases require the application of the California law in the matter of distribution. The cases referred to are three New York cases, viz.: Kilberg v. Northeast Airlines (1961), 9 N.Y.2d 34, 210 N.Y.S. 2d 133, 172 N.E.2d 526; Babcock v. Jackson (1963) 12 N.Y.2d 473, 240 N. Y.S.2d 743, 191 N.E.2d 279; and Pearson v. Northeast Airlines (1962) 2 Cir., 309 F.2d 553, cert. den. 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720, in each of which the court held the Massachusetts limitations of liability under its Wrongful Death Statute should not be applied to citizens of New York; and one Pennsylvania case—Griffith v. United Airlines (1964) 203 A.2d 796, where the court held that a domiciliary of Pennsylvania, whether suing in trespass or tort, was not bound by the limitations of the Wrongful Death Statute of the State of Colorado.

Each of these cases contain interesting, extensive and very learned discussions concerning the doctrine of conflict of laws, but each of them actually turn on the proposition that the limitation of liability in the Wrongful Death Statutes of Massachusetts and Colorado is contrary to the public policy of the State of New York in the three instances, and of the State of Pennsylvania, in the one instance, for the reason that in the Constitutions of New York and Pennsylvania it is specifically stated that no Statute can be passed which shall limit the amount to be recovered for injuries resulting in death.

We have no such declaration of policy in the Constitution of the State of California, and as above pointed out, the cases which have reached the Supreme Court in California have upheld the limitations of liability as to time and amount where the cause of action was based on the Statute of another State.

## ATTORNEYS' FEES

■ In most of the cases a fee of only 20 per cent plus two per cent for appeal appears to be agreeable to counsel, and to have been agreed upon by the adults involved. This is a reasonable fee. In

fact, counsel are to be commended for their reasonableness in this respect.

In some of the cases it appears that one-third of the total recovery is claimed as attorney's fees. In all cases where a share is received by adults, such an award will be regarded as reasonable if there has been a contract with the adult. Where minors are involved, the Court is of the view that 22 per cent is the maximum amount of their share which can be regarded as reasonable attorneys' fees. This is especially so in view of the fact that counsel who carried the laboring oar on discovery, pre-trial, and trial on liability are committed to 22 per cent, except in one case [Wiener v. United Airlines, No. 469–58–PH], where 25 per cent is claimed, which is reasonable in that case.

The procedure to be followed in distribution will be as follows:

A petition will be filed, setting forth whether each distributee is a minor or an adult, and the age or other incident causing adulthood [California C.C. § 25], requesting distribution of the money in specific amounts to counsel, the lien holder, if any, and to each distributee. If all distributees are adults, the petition should be signed and agreed to by all, and verified by one. If any distributee is a minor, the petition should be signed and verified by the guardian of the minor's property, and be accompanied with a certified copy of Letters of Guardianship of the appropriate court where the minor resides,[4] in accordance with Local Rule 22. A form of Judgment, approved in writing by all adult distributees, containing a finding by way of recital as to the minority or adulthood of each distributee, the lien claimant and the amount of lien, summary conclusion of the law as stated herein, and directing distribution of specific amounts to each person, or guardian

thereof, entitled to any portion of the Judgment, and present therewith a Satisfaction of Judgment approved as to form by both defendants, United Airlines and the United States of America.

---

4. Apparently all reside in the Southern District of California, except Paris (No. 62–1603–PH) who appears to reside in Illinois, Pebles (No. 62–1604–PH) who appears to reside in Washington State, and Darmody (No. 62–1605–PH) who appears to reside in Nebraska.