[Nos. B020837, B021794. Second Dist., Div. Four. Oct. 16, 1989.]

FAYE COATS, Plaintiff and Appellant, v.
K-MART CORPORATION, Defendant and Respondent.

**COUNSEL**

Greene, O'Reilly, Broillet, Paul, Simon & Wheeler, Edward J. Maginnis, Michael L. Goldberg and Aaron H. Simon for Plaintiff and Appellant.

Morris, Polich & Purdy, Robert S. Wolfe, James M. Chantland, David E. Cranston and Douglas J. Collodel for Defendant and Respondent.

OPINION

GOERTZEN, J.—This appeal is a consolidation of two appeals filed by plaintiff/appellant Faye Coats (appellant).[1] One challenged the dismissal with prejudice of her first four causes of action following a judgment on the pleadings in favor of defendant/respondent K-Mart Corporation (K-Mart); the second challenged the granting of the motion for nonsuit made by respondent. For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On May 31, 1980, at a K-Mart store in Los Angeles, Larry Wayne Hammons (decedent) was involved in an altercation with K-Mart employees. Decedent subsequently suffered a cardiac arrest, went into a coma, and died four hours later. Decedent was appellant's son.

On May 29, 1981, appellant filed her initial complaint for personal injuries, purporting to act in two capacities.[2] Alleging she was the administratrix of decedent's estate, appellant sought damages for injuries and expenses sustained by decedent prior to his death and punitive damages. (Prob. Code, § 573.) As an individual, she pleaded a cause of action for wrongful death. (Code Civ. Proc., § 377.)

Appellant's first amended complaint, filed on June 22, 1981, repeated the allegation that she was the administratrix of decedent's estate and sought damages on behalf of his estate and on behalf of herself individually.

In response to K-Mart's successful motion to strike, appellant filed a second amended complaint on September 20, 1982. In this complaint, which is the operative one on appeal, appellant nine times states that she is the administratrix of decedent's estate.

*The Estate's Action.* During discovery, K-Mart attempted to secure the release of decedent's medical, psychiatric, criminal and drug treatment records from various hospitals, including veterans' hospitals in Los Angeles, San Francisco, Palo Alto, Little Rock, and Portland. K-Mart considered these records critical for its defense that decedent had a well-documented history of extensive drug abuse, which created a drug-induced psychotic condition, and which caused him to act irrationally and violently at the K-Mart store on the day of the incident.

---

[1] On September 3, 1987, we granted appellant's motion to deem the first appeal from the order of dismissal to be an appeal from the final judgment and to consolidate the two appeals.

[2] Throughout this entire suit and on appeal, appellant has been represented by the same counsel.

Decedent's health care providers declined to produce these records without proof that appellant had been appointed as administratrix of decedent's estate and that she authorized their release. On May 18, 1984, October 16, 1984, and August 2, 1985, in response to K-Mart's motions, the court ordered appellant to sign authorization forms for the release of decedent's medical and psychiatric records. In response to the second motion, appellant's counsel agreed to provide such authorization forms to secure the release of these records.

From January 23, 1986, through March 5, 1986, K-Mart repeatedly requested this proof and authorization from appellant, by phone and written request. On March 5, 1986, K-Mart moved to compel the production of the authorizations. After the March 20, 1986, hearing, appellant was ordered to "[f]urnish proof of appointment of administrator by 3/26/86."

When the documents were provided to K-Mart, they indicated that appellant had been appointed administratrix on March 18, 1986. Subsequently, the court (Ross, J.) deemed the estate's survival action to be filed as of March 18, 1986, the date on which appellant qualified as its administratrix.[3]

K-Mart successfully moved to amend its answer to the first amended complaint to include a statute of limitations defense. On April 25, 1986, K-Mart filed a motion for judgment on the pleadings on the estate's causes of action under Probate Code section 573. K-Mart based its motion on the one-year statute of limitations in Code of Civil Procedure section 340, subdivision (3), which had run on May 31, 1981, five years before appellant was appointed as the administratrix of decedent's estate.

On June 2, 1986, Judge Ross granted the motion and, finding them barred by the statute of limitations, dismissed those causes of action which were asserted by appellant in her capacity as the administratrix of decedent's estate.

*The Wrongful Death Action.* The trial on the wrongful death action commenced on May 29, 1986, before Judge Betty Jo Sheldon.

Appellant testified to the following. Decedent left home when he was 17, when he went into the United States Navy. The last two times she saw decedent were in 1977 and 1979. While she knew decedent had problems,

---

[3] When making this determination, the court commented to appellant's counsel: "I think you are a little fast and loose with some representations to the court last time, Counsel. When this was in before, there were representations that she was the administrator. At the time you must have filed the petition for appointment of her as an administrator."

she didn't know what they were. She didn't know where he resided nor what he did for a living.

At the time of his death, appellant was not dependent upon decedent "for the necessaries of life."

Decedent had a daughter, Alicia Kay, born March 15, 1971. Decedent was not married to his daughter's mother, Priscilla Franks. After decedent's death, appellant searched Seattle, and other parts of Washington state but found no record of the daughter's birth under the name Alicia Kay Hammons. Appellant knew that Ms. Franks' family was from Washington state.

The next trial day, June 17, 1986, K-Mart moved for a nonsuit on the ground that Code of Civil Procedure 377 provides that only heirs have standing to sue in a wrongful death action. K-Mart argued that appellant had the burden of proof to establish that she was the proper heir.

Out of the presence of the jury, appellant was recalled for further testimony on her standing to sue as decedent's heir. Appellant testified that decedent told her that Ms. Franks was expecting; he did not know if the child was his; they were not married, but he was willing to accept the child because he wanted a home and a family. After the birth, decedent wrote to appellant to inform her about the birth. Decedent and Priscilla lived together the last two or three months of her pregnancy, but appellant did not know whether they continued to live together after the baby's birth. After decedent's death, appellant searched for his daughter because she felt that the baby should be able to collect social security benefits. She enlisted the help of the chief of police in Longview, Washington, but he wrote her two months later to inform her that his search of the hospitals in Longview, Seattle, and Portland had been unsuccessful.

After further argument, the court granted K-Mart's motion for nonsuit.

Appellant moved for reconsideration on the ground of newly discovered evidence, from an unnamed witness, that decedent had stated that Alicia Kay was not his daughter. K-Mart countered that appellant's own answers to interrogatories indicated that she knew about decedent's daughter since December 17, 1982, when she had answered that decedent had "one child with Priscilla Franks." Consequently, K-Mart argued, appellant had failed to meet her burden of showing that, with reasonable diligence, these new facts could not have been discovered earlier as she and her counsel were on notice since 1982 that appellant might not be the proper heir to maintain the wrongful death action.

During argument on the motion, appellant's counsel conceded that he knew, during pretrial, that "there may be a daughter." The motion for reconsideration was denied.

## ISSUES ON APPEAL

As to the judgment on the pleadings, appellant asserts that the court erred when it dismissed her suit as time-barred by the statute of limitations because her postlimitation appointment as administratrix of decedent's estate "relates back" to the filing of the original complaint; and since K-Mart had timely notice of the action, it suffered no prejudice.

As to the nonsuit, appellant contends that the court erred because it improperly removed a question of fact from the jury.

## DISCUSSION

*Judgment on the Pleadings.* The estate's suit was brought pursuant to Probate Code section 573.[4] This section permits causes of action to be maintained on behalf of a decedent's estate by a decedent's "personal representative." For purposes of this appeal, Probate Code section 58, subdivision (a) defines "personal representative" as an administrator.

In the instant case, appellant admits that she was not the administratrix of decedent's estate when she filed suit on May 29, 1981; however, she urges us to "relate back" the complaint deemed to have been filed on March 18, 1986, to the date of the original complaint. We are presented with the novel question: May the "relation back" doctrine be applied to confer standing on a plaintiff who knowingly lacked it when suit initially was filed? We answer in the negative.

We begin by summarizing what this case is not. It does not present us with a situation where appellant completed the forms to be appointed administratrix, but through clerical error in the probate court, they were not filed. (See discussion in *Regie de L'Assurance Auto.* v. *Jensen* (Minn. 1987) 399 N.W.2d 85, 90.) It does not present us with a situation where the motion to appoint the administrator was timely but made by the wrong party. (*Pavlov* v. *Konwall* (1983) 113 Ill.App.3d 576 [447 N.E.2d 982].) In short, it does not present us with an appellant who, in blameless good faith,

---

[4] References to the Probate Code are to the sections which were in effect at the pertinent times of this action. The Probate Code has subsequently been recodified, with different section numbers. Throughout this opinion, the currently operative code sections appear in parenthesis after each pertinent statutory citation different from its predecessor.

believed she was the administratrix of decedent's estate when the initial complaint was filed.

Neither does it present us with the traditional "relation back" case, where the doctrine was applied to revive a cause of action against a later-named "Doe," of whose name plaintiff had been ignorant; or to protect the rights of a plaintiff who had standing to sue when the initial complaint was filed, but in a different capacity. (*Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596 [15 Cal.Rptr. 817, 364 P.2d 681]; *Barrington* v. *A.H. Robins Co.* (1985) 39 Cal.3d 146 [216 Cal.Rptr. 405, 702 P.2d 563].) Finally, it does not present us with a plaintiff who, under the law of a particular forum, had standing to sue when the initial complaint was filed, only to discover later that the law of a different forum applied. (*Olsen* v. *Lockheed Aircraft Corp.* (1965) 237 Cal.App.2d 737 [47 Cal.Rptr. 242].)

Here, appellant knew, or most certainly should have known, that she was not the administratrix of decedent's estate, although she had alleged in three complaints that she was the administratrix and which she, through counsel, had represented to the court on numerous occasions. An administrator is not created by self-proclamation. There are specific statutory requirements which must be met before an individual becomes an administrator of an estate. (Prob. Code, §§ 540 and 541 (now §§ 8403 and 8480).) Pursuant to Probate Code section 573, only the personal representative of the decedent has standing to maintain a cause of action. For purposes of this appeal, to be decedent's "personal representative," appellant would have had to be the duly appointed administratrix of decedent's estate at the time of the filing of the initial complaint. She was not; and there are no facts in the record which indicate she made any good faith effort to be timely appointed or to comply with the pertinent requirements of the Probate Code. Under these circumstances, we hold that the court below did not abuse its discretion when it did not apply the "relation back" doctrine.[5]

■ *The Motion for Nonsuit.* "A motion for nonsuit is a procedural device which allows a defendant to challenge the sufficiency of plaintiff's evidence to submit the case to the jury. [Citation.] Because a grant of the motion serves to take a case from the jury's consideration, courts traditionally have taken a very restrictive view of the circumstances under which nonsuit is proper. The rule is that a trial court may not grant a defendant's

---

[5] Appellant argues that K-Mart suffered no prejudice; therefore, the "relation back" doctrine should be applied to save her survival causes of action. This contention is without merit because appellant failed to meet the "standing" requirements of Probate Code section 573 in the first instance; therefore, lack of prejudice alone is an insufficient ground upon which to ignore the statute of limitations. (See *Hazel* v. *Hewlett* (1988) 201 Cal.App.3d 1458, 1466 [247 Cal.Rptr. 723].)

motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor. [Citations.] [¶] ■ In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor. . . .' [Citation.]" (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 117-118 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].) With these rules in mind, we turn to the case at bench.

■ Appellant concedes that her wrongful death claim would be barred were Alicia Kay Franks found to be decedent's daughter. This is so because the wrongful death statute allows appellant to sue under two circumstances: (1) if decedent had no surviving issue (Code Civ Proc. § 377, subd. (b)(1); Prob. Code, § 6402); and (2) if there are surviving issue, only if appellant had been dependent on the decedent. (Code Civ. Proc., § 377, subd. (b)(2).) ■ The dependency envisioned by this statute is financial dependency for "shelter, clothing, food and medical treatment." (*Perry* v. *Medina* (1987) 192 Cal.App.3d 603, 610 [237 Cal.Rptr. 532].) ■ Appellant testified that she was not dependent upon decedent "for the necessaries of life"; consequently, appellant's only standing would derive from Code of Civil Procedure, section 377, subdivision (b)(1).

■ When a surviving parent brings suit pursuant to Code of Civil Procedure, section 377, subdivision (b)(1), the parent's affirmative case must establish that decedent had no issue. (*Jolley* v. *Clemens* (1938) 28 Cal.App.2d 55, 74-75 [82 P.2d 51].) The determinative question is: Indulging every legitimate inference which may be drawn from the evidence in appellant's favor, did appellant meet her burden of establishing that decedent had no issue, making her the proper heir to maintain the wrongful death suit? We hold that she did not.

■ In an answer to an interrogatory, on information and belief, and twice at trial appellant testified that she knew decedent had a daughter. She gave the daughter's name, date of birth, and mother's name. When called for further testimony in response to K-Mart's motion for nonsuit, appellant referred to two communications with decedent about his child: first, when he "told" her that Priscilla Franks was expecting; and second, when he wrote appellant after the birth. This clear, unequivocal testimony was challenged, but not directly contradicted, by appellant's subsequent testimony. She later testified that when decedent told her Ms. Franks was expecting, he also stated that he was unsure whether the child was his, but he "was

willing to accept the baby" because he wanted a home and a family. For purposes of a wrongful death suit, this testimony falls far short of establishing that decedent left no issue and that appellant was the proper heir to maintain the action.

■ Appellant's notice of appeal states that she also appeals from the court's denial of her motion for reconsideration. However, appellant's brief does not specifically attack the propriety of the trial court's action in ruling on this motion. Under these circumstances, appellant is deemed to have waived her appeal from this separate order. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 41-42 [210 Cal.Rptr. 762, 694 P.2d 1134].)

### DISPOSITION

Both judgments are affirmed.

McClosky, Acting P. J., and George, J., concurred.